```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

            Plaintiff,

    - against -

ONE OR MORE UNKNOWN TRADERS IN THE COMMON
STOCK OF CERTAIN ISSUERS (a/k/a AWE
TRADING, INC. and ANDREW ANDERSEN),

            Defendants,

    - and -


INTERACTIVE BROKERS, LLC,

            Relief Defendant.

----------------------------------X
```
                                    FOR ELECTRONIC
                                    PUBLICATION ONLY

                                    **ORDER GRANTING
                                    PLAINTIFF'S MOTION FOR
                                    DEFAULT JUDGMENT AND
                                    ENTERING FINAL
                                    JUDGMENT AGAINST
                                    DEFENDANTS**

                                    08-CV-1402 (KAM) (JMA)

**MATSUMOTO, United States District Judge**:

Pending before the court is plaintiff Securities and Exchange Commission's ("SEC" or "plaintiff") motion for default judgment seeking: (1) a permanent injunction barring defendants One or More Unknown Traders in the Common Stock of Certain Issuers (a/k/a AWE Trading, Inc. and Andrew Andersen) ("defendants" or "unknown traders") from future violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, promulgated thereunder, 17 C.F.R. § 10b-5, and (2) disgorgement of defendants' profits acquired while perpetuating the fraudulent scheme. (See Mot. for Default J. at 3.) For the reasons set

forth herein, plaintiff's motion for default judgment is granted in part and denied in part.

## I. BACKGROUND

### A. Procedural History

Plaintiff commenced this action on April 7, 2008, alleging violations of Section 10(b) and Rule 10b-5 seeking (1) a permanent injunction barring defendants from future violations of Section 10(b) and Rule 10b-5 and (2) disgorgement of defendants' ill-gotten gains.[1] (Compl. at 14.) Plaintiff also named as a "relief defendant" Interactive Brokers LLC ("Interactive" or "Relief Defendant"), a broker-dealer registered with the SEC that detected suspicious activity, suspended that activity and froze all funds in defendants' profiting accounts. (Compl. ¶¶ 12-13.) The Relief Defendant was dismissed voluntarily on December 30, 2008. (Doc. No. 30.) Due to the inability to identify and locate individuals associated with the defendants who used the internet to conduct

---

[1] Plaintiff additionally sought repatriation of all assets, prejudgment interest on the disgorgement, and civil penalties pursuant to Sections 20(d) and 21(d) of the Exchange Act. However, plaintiff's motion for default judgment only contains the two above stated forms of relief. Therefore, this court will restrict its consideration of relief to those requested by plaintiff in their most recent submission to the court.

business, plaintiff requested authorization to serve unknown traders by alternative means, pursuant to Federal Rule of Civil Procedure 4(f)(3). The court granted plaintiff's request on June 18, 2008. (Doc. No. 5, Mot. for Service by Pub.; Doc. No. 11, Order Granting Mot. for Service by Pub.) By September 19, 2009, plaintiff had successfully served defendants through alternative means, including email, facsimile, and publication, independently and with assistance from Relief Defendant. (See Doc. No. 20, Not. by SEC re. Order on Mot. for Service by Pub.) Defendants have failed to answer or move with respect to the complaint, despite being served with process in the aforementioned ways. On September 23, 2008, the SEC filed a motion for entry of clerk's default against unknown traders for neglecting to answer or otherwise respond to plaintiff's complaint.

On September 24, 2008, the court granted plaintiff's motion for entry of clerk's default and, on September 30, 2008, granted plaintiff ninety days to seek a default judgment and apermanent injunction against the defendants and disgorgement equal to the amount of deposits that the Relief Defendant deposited into the Court Registry pursuant to the court's order to turnover funds. (See Order Granting Mot. for Entry of

Default dated September 24, 2008; Order granting Mot. to Release and Turnover Funds dated September 24, 2008; Order Granting Request for 90 days to file Mot. for Default J. dated September 30, 2008.) On October 10, 2008, the clerk entered default with respect to the unknown traders. (See Clerk's Entry of Default dated October 10, 2008.) On December 30, 2008, plaintiff filed its Memorandum of Law in support of its motion for default judgment against defendants One or More Unkown Traders in the Common Stock of Certain Issues (a/k/a AWE Trading, Inc. and Andrew Andersen) (see Doc. No. 29, Motion for Default Judgment) and voluntarily dismissed all claims with prejudice against Relief Defendant (see Doc. No. 30, Not. of Voluntary Dismissal).

**B. Allegations in the Complaint**

The complaint alleges that defendants engaged in a sophisticated internet securities trading scheme involving invasion of brokerage accounts, identity misappropriation and fabrication, and a calculated series of trades amounting to defendants' realization of a substantial profit. The scheme began in February 2007 when defendants posted a job listing for a position at AWE, a fictitious Latvian brokerage firm, on a classifieds website, www.craigstlist.org. (See Compl. ¶ 2-3.)

4

Defendants requested applicants' "dates of birth, social security numbers, and other personal information" to purportedly "perform a background check," but instead, used this information to open four separate brokerage accounts ("profiting accounts") at Interactive without the knowledge or authorization of those responding to the posting ("intermediaries"). (Compl. ¶ 3, 15-16.) The profiting accounts were set up over a two month period, one on February 15, 2007, another on March 30, 2007, one on April 10, 2007, and another on April 18, 2007. (Compl. ¶¶ 28, 35, 41, 49.) Using the four intermediaries, defendants wired various amounts of money to the intermediaries' personal accounts and subsequently instructed the intermediaries to wire transfer the funds from their personal accounts to specific account numbers at Interactive which corresponded to the profiting accounts opened in the intermediaries' names. (Compl. ¶ 17-18.) The defendants then gained unauthorized access to other online brokerage accounts owned by innocent third-parties ("victim accounts"), and orchestrated a series of quick, well-timed purchases and sales of "thinly-traded securities" from the victim accounts to the profiting accounts. (Compl. ¶¶ 3, 19, 21-23.) The purchases made from the victim accounts increased the trading volume and the market price of specifically targeted

securities, resulting in a loss to the victim accounts and a profit of more than $66,000 that defendants realized upon sale of those same securities in the profiting accounts. (Compl. ¶ 21.) Defendants also profited through purchases at increasingly higher prices of targeted securities in the victim accounts and then immediately sold the targeted securities short in the profiting accounts, causing share prices in the victim accounts to decrease due to a cessation of purchases in the victim accounts. (Compl. ¶ 24.) Defendants continued this scheme until April 2007, when Interactive "became suspicious of the trading in the [p]rofiting [a]ccounts and suspended all activity . . . ." (Compl. ¶ 4.)

## I. DISCUSSION

### A. Default Judgment Standard

Rule 55(b) of the Federal Rules of Civil Procedure provides that when a party moves for judgment against an adverse party who has failed to answer or otherwise appear in the action, the court may enter judgment against the defaulting party. See Fed. R. Civ. P. 55(b). A party's default constitutes an admission of the well-pleaded factual allegations in the complaint, except as to claims relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d

155, 158 (2d Cir. 1992); <u>Au Bon Pain Corp., v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981). Moreover, damages inquest by exhibits and affidavits, without an in-person hearing, may be conducted as long as the court can ensure "a basis for the damages specified in the default judgment." <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 111 (2d Cir. 1997) (quoting <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)).

Plaintiff has properly moved for default judgment against defendants. Thus, the court proceeds to assess the defendants' liability under Section 10(b) and Rule 10b-5, as well as plaintiff's requested relief.

**B. Defendants' Liability for Violations of Section 10(b) of the Exchange Act and Rule 10b-5 of the Regulations Promulgated Thereunder**

Plaintiff seeks a default judgment that defendants are liable for violations of Section 10(b) of the Exchange Act and Rule 10b-5 of the regulations promulgated thereunder. (Mot. for Default J. at 3-6.) Section 10(b) of the Exchange Act states, in relevant part,

> To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley

> Act [15 USCS § 78c note]), any manipulative
> or deceptive device or contrivance in
> contravention of such rules and regulations
> as the Commission may prescribe as necessary
> or appropriate in the public interest or for
> the protection of investors.

To succeed on its claim of liability based on a violation of Section 10(b) and Rule 10b-5, plaintiff must show, based on the facts established by default, that defendants "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a [manipulative or deceptive] device; (2) with scienter; (3) in connection with the purchase or sale of securities," SEC v. Monarch Funding, Corp., 192 F.3d 295, 308 (2d Cir. 1999) and (4) using an "instrumentalities of interstate commerce." 25 C.F.R. § 240.10b-5.

### 1. Use of a Manipulative of Deceptive Scheme or Device

The first element for a Section 10(b) and Rule 10b-5 violation, the use a fraudulent device or scheme, is an effort or plan "that individuals devise to take advantage of others." United States v. Treacy, 08-cr-03666 (RLC), 2008 WL 4934051, at *4 (internal citation and quotations omitted); see also, Ernst & Ernst v. Hochfelder, 425 U.S. 185, 203 (1976) (stating that the first element was described by the drafters "catchall"clause to enable the Commission "to deal with new manipulative [or

cunning] devices") (internal quotations and citations omitted). The allegations in the complaint, deemed admitted when a defendant is in default, establish that defendants (1) misled individuals into disclosing personal identification information under the guise of conducting employment background checks and used the information to open four profiting accounts in each of the intermediaries' names at Interactive without authorization from the intermediaries (Compl. ¶ 16), (2) gained unauthorized access to anonymous third-party accounts by misappropriating the account holders' usernames and passwords for the unauthorized purchase of targeted securities, artificially inflating the securities' value, (Compl. ¶ 19-21), and (3) conducted manipulated trades to ensure profits in their profiting accounts in long-sale and short-sale transactions. (Compl. ¶ 22-24.) These undisputed facts satisfy the first element of plaintiff's claim. See Monarch Funding Corp., 192 F.3d 295, 300-01 (2d Cir. 1999) (finding that defendant's history of orchestrating an artificial increase in stock prices through a series of controlled trades and profiting from their actions was sufficient to qualify as a violation of Section 10(b) and Rule 10b-5).

### 2. **With Scienter**

The facts established through default additionally satisfy the second element for a Section 10(b) and Rule 10b-5 violation, that defendants made material misrepresentations with scienter. Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Aaron v. SEC, 446 U.S. 686, 686 n.5, 695-97 (1980). According to the Second Circuit, in the context of violations of Section 10(b) and Rule 10b-5, scienter requires at least "willful or reckless disregard for the truth," Lanza v. Drexel & Co., 479 F.2d 1277, 1306 (2d Cir. 1973), or "knowing misconduct," SEC v. First Jersey Secs., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996).

The defendants' deliberately deceitful conduct, highlighted supra, establishes that they acted with an intent to deceive, manipulate and defraud, or, at least, with willful or reckless disregard for the truth. See, e.g., SEC v. McNulty, 137 F.3d 732, 737 (2d Cir. 1998) (affirming district court's denial of a motion to reconsider a grant of default judgment where defendant's scienter was inferred from his conduct). Defendants must have been fully aware that their employment posting on www.craigslist.org was deceitful and fictitious, and that opening profiting accounts in the names of four individuals

without the individuals' knowledge and consent, and logging into the victim accounts was unauthorized, deceitful, manipulative and fraudulent.  Defendants used the fruits of their fraudulent conduct and others' identities, accounts and funds to deliberately manipulate stock prices, frequently by buying and selling targeted securities from the profiting accounts within minutes of buying or selling them through the victim accounts at a lower price.  (Compl. ¶ 23-24.)   Thus, the facts establish scienter under Section 10(b) and Rule 10b-5.

### 3. In Connection With the Sale or Purchase of Securities

The court further finds that the third element of a violation of Section 10(b) and Rule 10b-5 is easily satisfied. "[T]he SEC has consistently adopted a broad reading of the phrase 'in connection with the purchase or sale of any security.'"  SEC v. Zanford, 535 U.S. 813, 819 (2002).  In the instant action, defendants committed their fraudulent scheme for the exclusive purpose of reaping profits from the manipulation of purchases and sales of targeted securities in fraudulently created accounts.  Thus, defendants' actions meet the "in connection with" element for a Section 10(b) and Rule 10b-5 violation.  Accord United States v. O'Hagan, 521 U.S. 642 (1997) (holding that the "in connection with" test was met when

11

defendant misappropriated confidential information and used it for trading purposes).

### 4. Interstate Commerce

Finally, the facts established on default show that defendants used an "instrumentality of interstate commerce," 15 U.S.C.§ 78; 17 C.F.R. § 240.10b-5, including the internet and wire transfers. See SEC v. Solucorp Indus. Ltd., 274 F. Supp. 2d 379, 419 (S.D.N.Y. 2003) (finding that the defendants used the "instrumentalities of interstate commerce" which included "the mails and wires, including the Internet, news wires and telephone lines").

For the foregoing reasons, the court finds that violations of Section 10(b) and Rule 10b-5 are established and, thus, defendants are liable. The court now evaluates whether plaintiff's requested relief is appropriate.

### C. Plaintiff's Requested Relief

#### 1. Permanent Injunction

Plaintiff seeks a permanent injunction enjoining defendants from future violations of Section 10(b) and Rule 10b-5. (Mot. for Default J. at 8.) When there has been a violation of Section 10(b) and Rule 10b-5 of the Exchange Act, Section 21(d) of the Exchange Act authorizes the Commission to seek, and

the court to grant, permanent injunctive relief "upon proper showing." SEC v. Tannenbaum, No. 99-cv-6050, 2007 WL 2089326, at *2 (E.D.N.Y. July 19, 2007) (quoting 15 U.S.C. § 78u(d)(1)); see also SEC v. Lipkin, No. 99-cv-7357, 2006 WL 435035, at *1 (E.D.N.Y. Jan. 9, 2006). In addition to proof that the defendant committed the alleged violation, a "proper showing" requires "proof that a reasonable likelihood exists that violations will occur in the future." Tannenbaum, 2007 WL 2089326 at *2 (internal quotations and citation omitted).

"'[A] court makes a prediction of the likelihood of future violation based on an assessment of the totality of the circumstances surrounding the particular defendant and the past violations that were committed.'" SEC v. China Energy Savings Tech., 06-cv-6402 (ADS)(AKT), 2008 WL 6572372, at *7 (E.D.N.Y. Mar. 28, 2008) (quoting SEC v. Bonastia, 614 F.2d 908, 912 (3d Cir. 1980). Courts consider several factors when determining whether there is a realistic likelihood of future violations: "(1) the degree of scienter involved; (2) the isolated or persistent nature of the past fraudulent acts; (3) the defendant's appreciation of his wrongdoing; and (4) the defendant's opportunities to commit future violations." SEC v.

Opulentica, LLC, 479 F. Supp. 2d 319, 329 (S.D.N.Y. 2007) (citing SEC v. Cavanagh, 155 F.3d 129, 135 (2d Cir. 1998)).

Each of these factors is satisfied in the present case. First, with respect to the degree of scienter, the defendants' violations of the securities laws were systematic and calculated, involving a high degree of "scienter" as demonstrated by their sophisticated use of the internet in a deliberately fraudulent manner that permeated their scheme to deceive and manipulate individuals and stock transactions to general profits. Second, the defendants' scheme allegedly generated almost $100,000 in profits over a two month period from repeated long and short sales of targeted securities from separate profiting and victim accounts established at different times, demonstrating that the occurrences were not isolated. See, e.g., SEC v. Lipkin, No. 99-cv-7357, 2006 WL 435035, at *1 (E.D.N.Y. Jan. 9, 2006) ("The occurrences were not isolated, but rather took place continuously over a two-month period.").

With respect to the third factor, where, "as here, a party has failed to appear, that party fails to recognize his wrongdoing and provide assurances against further violations." China Energy Savings, 2008 WL 6572372 at *8. Fourth, defendants have ample opportunity to commit future violations because

14

defendants' identities and locations remain unknown and they adeptly use the internet to perpetuate the fraudulent scheme. Finally, the injunction that will be imposed is not onerous; it enjoins the defendants from violating the law.

Accordingly, the court will issue a permanent injunction prohibiting the defendants from committing further violations of Section 10(b) of the Securities and Exchange Act and Rule 10b-5 of the Regulations promulgated thereunder.

### 2. Disgorgement

Plaintiff additionally seeks disgorgement of defendants' profits from their fraudulent scheme. "In cases involving securities law violations, a 'district court has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits.'" SEC v. One Wall St., Inc., 06-cv-4217 (NGG)(ARL), 2008 WL 5082294, at *5 (E.D.N.Y. Nov. 26, 2008) (quoting SEC v. First Jersey Sec., Inc., 101 F.3d at 1474). "The amount of disgorgement . . . is determined by the amount of profit realized by the defendant," One Wall Street, 2008 WL 5082294, at *5 (quoting SEC v. Absolutefuture.com, 393 F.3d 94, 96 (2d Cir. 2004), and only needs to be a reasonable approximation of profits, with the risk of uncertainty in the calculation falling "on the wrongdoer

15

whose illegal conduct created the uncertainty." Id. at *5 (quoting SEC v. Patel, 61 F.3d 137, 139-140 (2d Cir. 1995)); see SEC v. China Energy Savings Tech., Inc., 2008 WL 6572372, at *10.

A plaintiff bears the burden to show that the disgorgement figure "approximates the amount of unjust enrichment . . . ." One Wall Street, 2008 WL 5082294 at *5. To meet its burden, a special evidentiary hearing is not required, but plaintiff must submit affidavits or documentary evidence supporting its approximation. See Transatlantic Marine, 109 F.3d at 111 (holding the district court's perfunctory acceptance of plaintiff's unsupported claim for disgorgement unsatisfactory and an evidentiary hearing necessary); SEC v. World Info. Tech., Inc., 590 F. Supp. 2d 574, 577 (S.D.N.Y. 2008) (finding account statements and other evidence admitted during trial sufficient to support the disgorgement approximation).

In the instant case, plaintiff seeks disgorgement of $98,247.09, the amount of funds in the profiting accounts before Interactive suspended them. (Mot. for Default J. at 8; Compl. ¶ 4.) Although plaintiff might be entitled to recover the amount of defendants' unjust enrichment, plaintiff has not provided any sworn statements or documentary evidence in support

of its disgorgement approximation. In the absence of any evidence, the court cannot accept plaintiff's approximation. Therefore, plaintiff's motion for default judgment for disgorgement is denied without prejudice to plaintiff supplementing the record before the court with affidavits and documentary evidence supporting its disgorgement approximation within fifteen (15) days of entry of this order.

## III. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part plaintiff's motion for default judgment as follows: (1) Plaintiff's default judgment as to defendants' liability for violations of Section 10(b) of the Exchange Act and Rule 10b-5 of the Regulations is granted. (2) Plaintiff's motion for a permanent injunction barring defendants from further violations of Section 10(b) of the Exchange Act and Rule 10b-5 of the Regulations is granted. (3) Plaintiff's motion for disgorgement is denied without prejudice to plaintiff supplementing the record before the court with evidence that plaintiff's disgorgement calculation is accurate with fifteen (15) days of entry of this order.

**SO ORDERED.**

Dated: Brooklyn, New York
      October 2, 2009

                                            /s/
                                  KIYO A. MATSUMOTO
                                  United States District Judge
                                  Eastern District of New York